**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
ALVAN E. LEVENSON,                                      Chapter 11
          DEBTOR                                      Case No. 06-13399-WCH

_____

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matter before the Court is Alvan E. Levenson's (the "Debtor") Motion To Avoid Judicial

Lien (the "Motion") and MB Mortgage Trust's ("MB Trust") Opposition to Debtor's Motion to

Avoid Judicial Lien (the "Opposition").  During his divorce proceeding, the Debtor was found in

contempt and a special master was appointed to grant a mortgage on the Debtor's property.  The

Debtor contends the mortgage is a judicial lien subject to avoidance.  For the reasons set forth below,

I will enter an order denying the Motion.

## II. BACKGROUND

The present dispute is the latest salvo in litigation which has lasted over fifteen years and

spanned four different courts within the Commonwealth of Massachusetts.  The facts are not in

dispute and are largely taken from Appeals Court of Massachusetts' (the "Appeals Court") decision

in _Levenson v. Feuer_.[1]  The relevant history of this case may be summarized as follows.

---

[1] _Levenson v. Feuer_, 60 Mass. App. Ct. 428, 803 N.E.2d 341 (2004).  I also take judicial notice of the Superior Court of Massachusett's (the "Superior Court") decision in _Levenson v. Feuer_, No. 974699F, 2002 WL 31382569 (Mass. Super. Ct. July 2, 2002), _rev'd in part_, 60 Mass. App. Ct. 428.

In 1991, the Debtor and his then wife, June Levenson, filed for divorce after a long marriage.[2]

The resulting divorce proceeding in the Massachusetts Probate and Family Court Department,

Middlesex County Division, (the "Probate Court") was bitterly contested by both parties, particularly

with respect to the distribution of real estate interests and the alimony the Debtor should pay to June

Levenson.[3]  On September 9, 1993, prior to the conclusion of a trial in the Probate Court, the parties

negotiated and executed a formal separation agreement (the "Separation Agreement").[4]  Pursuant to

the Separation Agreement, the Debtor agreed to borrow funds from an institutional or private lender

to pay June Levenson $428,000 in full satisfaction of his alimony obligation.[5]  Within thirty days of

the Separation Agreement, the Debtor was obligated to execute "any and all reasonable documents

as customarily required in commercial lending transactions" upon terms and conditions set forth in

the Separation Agreement.[6]  Furthermore, it provided that the Debtor was immediately to execute

a $428,000 promissory note to June Levenson, secured by a mortgage on two commercial properties

he owned in Needham and Dedham, as well as his residence in Plymouth (the "Plymouth

Residence") as security for his alimony obligation while he sought financing and if it could not be

---

[2] *Levenson*, 60 Mass. App. Ct. 431.

[3] *Id*.

[4] *Id.*

[5] *Levenson*, No. 974699F, 2002 WL 31382569 *2.

[6]  *Id.*  Additional terms included capping the interest rate at fourteen percent per annum compounded, adding two years of prepaid interest to principal, capping the prepayment penalty at a sum equal to six months of interest, and placing deeds in escrow to be delivered to the lender in lieu of foreclosure in the event of the Debtor's default on the note and mortgage.

obtained.[7]

On that same date, the parties submitted the Separation Agreement to the Probate Court and

asked that it enter a judgment on the divorce which incorporated the Separation Agreement.[8]  The

Probate Court conducted a colloquy with the parties to ensure that they had reviewed the document

with their respective counsels, understood its terms, and entered into it free from fraud and duress.[9]

Both indicated that they did, and the Debtor further stated that he considered the Separation

Agreement to be fair.[10]  The Probate Court entered a judgment of divorce nisi (the "Divorce

Judgment") that day which incorporated the terms of the Separation Agreement.[11]  At the conclusion

of the hearing, the Debtor informed June Levenson's counsel, Haskell A. Kassler ("Kassler"), that

he terminated his own counsel and that Kassler should thereafter contact him directly.[12]  The Debtor

did not appeal the Divorce Judgment.

Throughout the negotiations, the parties understood that the financing of a lump sum alimony

payment would likely come from a private financing arrangement as a commercial bank would not

lend the Debtor $428,000 due to his financial situation.[13]  Prior to the execution of the Separation

Agreement, Kassler arranged for financing from a client of his firm for whom his partner, Curt R.

---

[7] *Id.*

[8] *Levenson*, 60 Mass. App. Ct. 432.

[9] *Levenson*, No. 974699F, 2002 WL 31382569 *3.

[10] *Id.*

[11] *Id.*

[12] *Levenson*, 60 Mass. App. Ct. 432.

[13] *Levenson*, No. 974699F, 2002 WL 31382569 *3-4.

Feuer ("Feuer"), managed a large sum of money.[14]  As an additional condition of this financing,

terms were inserted into the Separation Agreement providing that the Debtor would execute deeds

to three specified properties to be held in escrow to secure the mortgage and be delivered to the

lender in lieu of foreclosure proceedings in the event of the Debtor's default.[15]  After the Divorce

Judgment was entered, Kassler's firm prepared the financing documents, including the promissory

note, mortgages, deeds to the Debtor's three properties, and a trustee's certificate.[16]  The documents

provided that Feuer was the lender as the sole trustee of the MB Trust while the promissory note

reflected a loan in the amount of $571,218 with a two year term and thirteen percent interest.[17]

Despite his assent to the terms of the Divorce Judgment, shortly after its entry, the Debtor

informed June Levenson and her attorneys of his reluctance to proceed with the private financing

arrangement stating it was a "bad deal" for him, and desired  instead to propose a new settlement.[18]

The Debtor also failed to execute the temporary mortgages to June Levenson as interim security for

his alimony obligation.[19]  At a meeting on October 7, 1993, three days before the expiration of the

deadline for the Debtor to satisfy his alimony obligation pursuant to the Separation Agreement, the

---

[14] *Levenson*, 60 Mass. App. Ct. 432.

[15] *Id.*

[16] *Id.* at 433.

[17] *Id.*  The parties were apparently unconcerned with any conflicts of interest arising from
the source of this financing arrangement because the Separation Agreement specifically set forth
the terms and conditions of any loan that the Debtor may have sought commercially.  *Levenson*,
No. 974699F, 2002 WL 31382569 *3.

[18] *Levenson*, 60 Mass. App. Ct. 433.

[19] *Levenson*, No. 974699F, 2002 WL 31382569 *5.

Debtor refused to sign any of the financing documents.[20]

On October 4, 1993, June Levenson initiated contempt proceedings in the Probate Court

based upon the Debtor's failure provide her with the interim mortgage on the three properties.[21]  She

later amended her complaint to allege that the Debtor further violated the provisions of the

Separation Agreement by failing to execute the financing documents necessary to obtain private

loan.[22]  In his answer, the Debtor argued that the private financing arrangement was a bad deal and

sought to revise the Separation Agreement.[23]

Following a hearing on the complaint for contempt, the Probate Court entered a judgment

finding the Debtor in contempt, and appointed a special master pursuant to Mass. R. Dom. Rel. P.

70[24] to sign all documents the Debtor was obligated to sign pursuant to the Divorce Judgment.[25]

Levenson did not appeal this judgment.[26] The special master executed the deeds and financing

documents prepared by Kassler's firm and June Levenson received her lump sum alimony payment

---

[20] *Id.* at *6.

[21] *Levenson*, 60 Mass. App. Ct. 434.

[22] *Id.*

[23] *Id.*

[24] Mass. R. Dom. Rel. P. 70 is identical to Mass. R. Civ. P. 70, which provides in relevant
part:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or
> other documents or to perform any other specific act and the party fails to comply
> within the time specified, the court may direct the act to be done at the cost of the
> disobedient party by some other person appointed by the court and the act when so
> done has like effect as if done by the party.

[25] *Levenson*, 60 Mass. App. Ct. 434.

[26] *Id.*

from the loan proceeds.[27]

The entire balance of the principal of the note became due on November 15, 1995, and the

Debtor defaulted without making any effort to pay the principal.[28]  Accordingly, the deeds held in

escrow were delivered to Feuer and duly recorded.[29]

On November 21, 1995, the Debtor filed a complaint in the Probate Court seeking a

rescission of the financing documents executed by the special master and a declaration that the

contempt action had been premature and that he should have had the option to finance his alimony

obligation through a more favorable transaction than ordered in the contempt judgment.[30]  The

Probate Court declared the promissory note, mortgages, and deeds void, and ordered the Debtor to

execute new loan documents on reformed terms.[31]  Feuer appealed.[32]  During the pendency of the

Probate Court action, the Debtor filed a complaint against Feuer in the Superior Court alleging

various causes of action, including wrongful foreclosure, arising from the same circumstances.[33]

After a trial, the Superior Court dismissed the complaint on all counts and the Debtor appealed.[34]

---

[27] *Id.* at 435.

[28] *Id.*

[29] *Id.* at 435-436.

[30] *Id.* at 430.

[31] *Id.*

[32] *Id.*

[33] *Levenson*, No. 974699F, 2002 WL 31382569 *1.

[34] *Id.* at *18.

In February, 2003, the appeals were consolidated before the Appeals Court.[35]  On February

12, 2004, the Appeals Court held that the deeds the special master executed were equitable

mortgages and that Feuer's recordation of the deeds constituted wrongful foreclosure.[36]  With respect

to the Probate Court action, it held that the Debtor could not collaterally attack the contempt

judgment through a declaratory judgment proceeding.[37]  The Appeals Court affirmed the judgment

in so far as the Probate Court voided the deeds in lieu, but vacated the orders nullifying the original

note and mortgage and ordering the Debtor to execute new documents.[38]

On September 27, 2006, the Debtor filed a voluntary petition under Chapter 11 of the

Bankruptcy Code.  On Schedule A - Real Property, the Debtor listed a the Plymouth Residence and

the two commercial properties in Needham and Dedham as encumbered by a mortgage in the amount

of approximately $1,812,646.  On Schedule C- Property Claimed As Exempt, the Debtor claimed

an exemption up to $500,000 pursuant to Mass. Gen. Laws ch. 188 on the Plymouth Residence.  No

objections to the Debtor's claim of exemption were filed by the November 30, 2006 deadline.

During the pendency of this case, the Debtor sold the two commercial properties in Needham

and Dedham with leave of the Court.  To date, the Debtor has paid MB Trust $1,718,283.80 from

the proceeds of these sales on account of its $2,006,543.96 proof of claim filed on January 9, 2007.

---

[35] *Levenson*, 60 Mass. App. Ct. 431.

[36] *Id.* at 438.

[37] *Id.* at 441-442.

[38] *Id.* at 444-445.  The Appeals Court also remanded the matter back to the Probate Court
to reform its judgment to reflect certain computational and scrivener's errors not relevant here.

The balance of $288,260.16 remains secured by the Plymouth Residence.[39]

On January 16, 2008, the Debtor filed the Motion wherein he seeks to avoid the reformed MB Trust mortgage on the Plymouth Residence except to the value of $72,714, the appraised value above his $500,000 claimed exemption. According to the Debtor's Amended Disclosure Statement, the MB Trust will receive no payment on any avoided portion of its claim. MB Trust filed the Opposition on February 11, 2008. I held a hearing on February 13, 2008, and after oral arguments, took the matter under advisement.

### III. POSITIONS OF THE PARTIES

The Debtor

The Debtor asserts that the MB Trust mortgage is a judicial lien and thus avoidable to the extent that it impairs his exemption. The Debtor argues that the mortgage is a judicial lien because it required judicial action to become effective; namely, the Probate Court contempt judgment. The Debtor further contends that the MB Trust mortgage could not reasonably be considered consensual because he did not enter into an agreement with MB Trust and has spent the last fifteen years disputing the mortgage's validity. Moreover, the Debtor asserts that the debt is not a "domestic support obligation," which would render the lien unavoidable under 11 U.S.C. §§ 522(f)(1)(A) and 523(a)(5), as it is not owed to a present or former spouse or child of the Debtor and the debt is not

---

[39] In the Opposition, MB Trust generally denies paragraph ten of the Motion wherein the Debtor avers that the total remaining lien allegedly secured by the Plymouth residence is $288,260.16, the remaining balance after the sale proceeds have been applied to the claim, and is subject to adjustment depending on the resolution of the Debtor's objection to MB Trust's claim. As MB Trust concedes the original amount of its claim and how much it has been paid, it is unclear what is being denied.

in the nature of alimony, maintenance or support of such a person.[40]

As a judicial lien, the Debtor contends that it is partially avoidable because he has a valid

exemption of $500,000 in the Plymouth Residence, which has an appraised fair market value of

$572,714, and therefore applying the formula in 11 U.S.C. § 522(f)(2)(A), he is entitled to avoid all

but $72,714 of MB Trust's mortgage.

MB Trust

In contrast, MB Trust argues that its mortgage is a consensual lien and thus cannot be

avoided under 11 U.S.C. § 522(f).  First, MB Trust asserts that the Debtor's obligation to execute

the mortgage arose from the Separation Agreement, which the Debtor entered into willingly.

Second, MB Trust contends that an act done in conformity with Mass. R. Dom. Rel. P. 70 must

constitute a consensual lien given by the Debtor even though the act was done by a Special Master

because the text of the rule expressly states that an "act when done has like effect as if done by the

[disobedient] party."[41]    Moreover, MB Trust argues that the Debtor's obligations under the

Separation Agreement are no less consensual simply because it required court enforcement.

**IV. DISCUSSION**

Section 522 of the Bankruptcy Code provides in relevant part:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the
debtor may avoid the fixing of a lien on an interest of the debtor in property to the
extent that such lien impairs an exemption to which the debtor would have been
entitled under subsection (b) of this section, if such lien is--
    (A) a judicial lien, other than a judicial lien that secures a debt of a
    kind that is specified in section 523(a)(5);

---

[40] *See* 11 U.S.C. § 101(14A).

[41] Mass. R. Dom. Rel. P. 70.

* * *

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--

    (i) the lien;

    (ii) all other liens on the property; and

    (iii) the amount of the exemption that the debtor could

    claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.[42]

Section 522(b) incorporates the homestead exemption available under Massachusetts state law.[43]

The citation to 11 U.S.C. § 523(a)(5) refers to debts owed for a domestic support obligation, which

are excepted from discharge.[44]

From the outset, I note that neither party has argued that MB Trust's mortgage is a domestic

support obligation. I agree with this assessment as the debt is clearly not owed to the former spouse

and there has been no assignment of her domestic support rights to MB Trust.[45] In fact, the Debtor's

domestic support obligation was satisfied in 1995 when June Levenson's alimony was paid in a lump

sum from the proceeds of the MB Trust mortgage. Accordingly, the issue remaining before me is

whether the MB Trust mortgage is a judicial lien which may be avoided.

Generally speaking, a lien is a "charge against or an interest in property to secure the payment

of a debt or secure performance of an obligation."[46] The Bankruptcy Code recognizes three types

---

[42] 11 U.S.C. §§ 522(f)(1)(A), (2)(A).

[43] *See* 11 U.S.C. § 522(b); Mass. Gen. Laws ch. 188 § 1.

[44] 11 U.S.C. § 525(a)(5).

[45] *See* 11 U.S.C. § 101(14A).

[46] 11 U.S.C. § 101(37).

of liens: statutory liens, judicial liens, and security interests.[47]  A judicial lien is defined as a "lien

obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[48]  In

contrast, a security interest, or consensual lien, is a "lien created by an agreement."[49]  A lien is

classified based upon the method by which the lien is created, "regardless of the method used or

means employed to make [the lien] enforceable either between the parties or against the world."[50]

In the present case, it is clear that the lien in question was created by the special master's

execution of the promissory note and granting of the mortgage to MB Trust.  By definition, a

mortgage is a security interest in property.  MB Trust asserts that because Mass. R. Dom. Rel. P. 70

provides that the act of a special master has the "like effect as if done by the [Debtor]," the mortgage

must be a consensual lien.  The Debtor, however, argues that because the special master acted

pursuant to a Probate Court contempt judgment, the lien arose as through judicial action without his

consent.  The Debtor's argument misses the mark for several reasons.

While there are few published opinions interpreting Mass. R. Dom. Rel. P. 70, the Appeals

Court addressed the fourth sentence of the identical Mass. R. Civ. P. 70[51] in *Eastern Savings Bank*

---

[47] *Naqvi v. Fisher*, 192 B.R. 591, 595 (D.N.H. 1995).

[48] 11 U.S.C. § 101(36).

[49] 11 U.S.C. § 101(51).

[50] *Naqvi*, 192 B.R. at 596 (*quoting Wicks v. Wicks*, 26 B.R. 769, 771 (Bankr. D. Minn. 1982)).

[51] Mass. R. Civ. P. 70 provides in relevant part:

If real or personal property is within the Commonwealth, the court in lieu of
directing a conveyance thereof may enter a judgment divesting the title of any
party and vesting it in others and such judgment has the effect of a conveyance
executed in due form of law.

*v. City of Salem*.[52]   In that case, an agreed judgment of the superior court under rule 70, divesting

Salem of title to real property and vesting it in a developer, was vacated because Salem's city council

had not approved the settlement.   Prior to the judgment being vacated, the developer granted a

mortgage to the bank to secure a $2,800,000 construction loan.   Salem argued that it reacquired title

free of the bank's mortgage on the basis that the rule 70 judgment was void from its inception

because the settlement was unauthorized.   The Appeals Court disagreed, explaining that:

> In view of the exercise of the specifically granted power of the court which is inherent in a rule 70 judgment, we are of opinion that a judgment promulgated under the rule is not flavored by an element of contract, even when the parties have agreed to entry of the rule 70 judgment. *Contrast Bowers v. Board of Appeals of Marshfield*, 16 Mass.App.Ct. at 34, 448 N.E.2d 1293. The judge in such a case invokes powers to make something happen without further action by the litigants. It is far from a passive or simply acquiescent judicial act. Third parties may rely on such a judgment after the appeal period has run. Ability to so rely is necessary if the public are to have faith in the force of final judgments of the courts. *Hyland v. Kirkman*, 204 N.J.Super. 345, 371-372, 498 A.2d 1278 (1985). Restatement (Second) of Judgments § 74 comment f (1980). *Cf. Adoption of R.H.*, 485 Pa. 157, 161-162, 401 A.2d 341 (1979). In connection with land transactions, it was decided early in our jurisprudence that "[t]he purchaser is not bound to look beyond the decree when executed by a conveyance ...; nor to look further back than the order of the court." *Voorhees v. Bank of the United States*, 35 U.S. (10 Pet.) 449, 477-478, 9 L.Ed. 490 (1836).

> * * *

> Even if later vacated in accordance with law because it is voidable, a judgment entered of record which is not void is binding upon the parties and third parties who reasonably rely upon it during the time between the expiration of the appeal period from the judgment (without an appeal having been claimed) and the time the judgment is set aside. *Sullivan v. Jordan*, 310 Mass. 12, 16, 36 N.E.2d 387 (1941).[53]

The peculiar facts of this case emphasize the problem identified by the Appeals Court in the

*Eastern Savings Bank* case.   The Debtor, like the developer in that case, obtained financing based

---

[52] *Eastern Sav. Bank v. City of Salem*, 33 Mass. App. Ct. 140, 597 N.E.2d 55 (1992).

[53] *Id.* at 144-145.

upon a lender's reasonable reliance on a rule 70 judgment. Whereas the concern in *Eastern Saving*

*Bank* was the integrity of the land records system, in the present case it is the ability of third parties

to reasonably rely on the validity of the actions of a court appointed special master. If the Debtor

were able to avoid MB Trust's mortgage, it would be left with a partially unsecured and partially

dischargeable claim which the Debtor received in exchange for his non-dischargeable support

obligation to June Levenson.[54] Such a result would effectively eliminate a court's ability to utilize

this provision of the rule in divorce proceedings, as well as foreclose a potential debtor's ability to

obtain financing to fund a lump sum alimony payout.

Consent was explicitly not relevant in that case as the Appeals Court stated that consent of

the parties is not an essential element of a rule 70 judgment. Here, the Debtor's consent is central

to my determination. The *Eastern Savings Bank* case is, however, distinguishable from the present

one as the Probate Court relied on the first sentence of Mass. R. Dom. Rel. P. 70 to empower it to

appoint a Special Master to act on behalf of the contemptuous Debtor. Extending the Appeals

Court's reasoning to this provision of the rule in light the facts of this case, I find there is a sufficient

basis to conclude that the Debtor consented to the mortgage transaction.

Consent not being an essential element of a rule 70 judgment does not preclude it from being

an attendant circumstance. Here, the Debtor, with the assistance of counsel, negotiated the

Separation Agreement which included the terms of any financing arrangement he could have

obtained to satisfy his alimony obligation to June Levenson. The Debtor executed the Separation

Agreement, informed the Probate Court he believed it was fair, and asked that it be incorporated into

---

[54] I note that although MB Trust's loan was secured by two commercial properties in addition to the Plymouth Residence, it is not difficult to conceive of a similar situation where a debtor's homestead is the only collateral securing the loan.

the Divorce Judgment.  The Debtor did not appeal the Divorce Judgment, but simply refused to comply with its terms.  To enforce the Divorce Judgment, the Probate Court ordered a special master to execute financing documents with the terms previously agreed to by the Debtor in the Separation Agreement.  The Debtor again failed to appeal.  While the Debtor argues that he did not consent to this transaction, his actions evidence a prior agreement to, and subsequent ratification of, MB Trust's mortgage.  The special master stood in the shoes of the Debtor, and therefore his act must be given "like effect as if done by" the Debtor.  Accordingly, I find that MB Trust's mortgage is an unavoidable security interest and not a judicial lien.

## V. CONCLUSION

In light of the foregoing, I will enter an order denying the Motion.

_____

William Hillman
United States Bankruptcy Judge

Dated: March 25, 2008